OPINION OF THE COURT
 

 Titone, J.
 

 In this medical malpractice action against multiple defendants, plaintiff has recovered a judgment for wrongful death and has been awarded damages, as reduced by the trial court and affirmed by the Appellate Division, against the only nonsettling defendant, Albert Einstein College of Medicine (Einstein). The primary issue in this case, as in the companion cases
 
 (Didner v Keene Corp.,
 
 82 NY2d 342;
 
 Dudick v Keene Corp.,
 
 82 NY2d 821 [both decided herewith]), is the proper method for computing the setoff required by General Obligations Law § 15-108 (a) where two or more defendants have settled with the plaintiff before entry of judgment. Unlike the companion cases, this appeal presents an additional question: whether the approval of the Surrogate’s Court is necessary to render a settlement in a wrongful death action final and binding.
 

 I.
 

 Before the verdict was announced, two of the defendants, Drs. Mancuso and Allen, settled collectively for the sum of $1.1 million, and defendant Dr. Sandor settled for $650,000. Another defendant, Misericordia Hospital Medical Center (Misericordia), settled with plaintiff for $50,000. Only defendant
 
 *336
 
 Einstein’s liability remained to be determined by the jury. The jury’s apportionment of the fault in this case — a factual determination which the Appellate Division has affirmed (158 AD2d 195) — was 25% ($550,000) against Einstein, 25% ($550,-000) against defendants Dr. Mancuso and Dr. Allen, and 50% ($1,100,000) against defendant Dr. Sandor. Defendant Misericordia was determined to have no responsibility for plaintiffs decedent’s injuries.
 

 Since the jury’s apportionment of fault differed from the amounts that the settling defendants had paid, a dispute has arisen regarding how the General Obligations Law § 15-108 (a) setoff for settlements should be applied.
 

 II.
 

 Initially, we reject plaintiffs contention that General Obligations Law § 15-108 (a) is not applicable because the settling defendants did not have formal executed releases in hand at the time judgment was entered. As we stated in
 
 Didner v Keene Corp. (supra),
 
 a settlement entered into or memorialized in open court that effectively and finally terminates the action against the settling defendants is sufficient to invoke the remedial provisions of the statute.
 

 We also reject plaintiffs more substantive contention that General Obligations Law § 15-108 (a) is not applicable because the settlements in question were not finalized until after the judgment was entered. This argument is predicated on the assumption that under EPTL 5-4.6 the approval of the Surrogate was required before the settlements would be final and binding. Relying on this central supposition, plaintiff then argues that
 
 Rock v Reed-Prentice Div.
 
 (39 NY2d 34, 40-41), in which this Court held that General Obligations Law § 15-108 (c) does not apply to postjudgment settlements
 
 (cf, Didner v Keene Corp., supra; Lettiere v Martin El. Co.,
 
 62 AD2d 810,
 
 affd
 
 48 NY2d 662), precludes application of General Obligations Law § 15-108 (a) to his settlements, because those settlements, although reached before judgment, did not receive the Surrogate’s imprimatur of approval until more than four months after judgment was entered.
 

 The suggestion that the Surrogate has a mandatory role to play in the settlement of wrongful death actions has no support in EPTL 5-4.6. As drafted both before and after its 1992 revisions
 
 (see, L
 
 1992, ch 595), that statute clearly and unequivocally confers the power of approval upon "the court
 
 *337
 
 in which [the] action for [wrongful death] * * * is pending,” i.e., the Supreme Court. As it existed before 1992, EPTL 5-4.6 (a) provided:
 

 "Upon the application of an administrator appointed under 5-4.1 or a personal representative to the
 
 court in which an action for wrongful act, neglect or default causing the death of a decedent is pending,
 
 the court may, after inquiry into the merits of the action and the amount of damages proposed as a compromise^ approve or disapprove the compromise]” (emphasis supplied).
 

 The current version is the same except for the addition of a proviso authorizing a "transfer [of] the action to the surrogate’s court which issued the letters [of administration]
 
 for determination of the issues of allocation and distribution of proceeds and related matters”
 
 after a compromise has been approved (§ 5-4.6 [a] [1] [emphasis supplied]).
 

 The amendment was enacted to address a specific problem: the absence from the Supreme Court wrongful death action of certain parties, including the State Tax Commission and the individual distributees, who have an interest in the distribution of the lawsuit’s proceeds
 
 (see,
 
 Turano, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 17B, EPTL 5-4.6, 1993 Pocket Part, at 87). To remedy this problem, the Legislature made express provision authorizing,
 
 but not requiring,
 
 the court in which the wrongful death action is pending to refer the case to the Surrogate for the limited purpose of administering the proceeds of an
 
 approved
 
 settlement (L 1992, ch 595).
 
 [1]
 
 There is nothing in the amendment
 
 *338
 
 that purports to alter the right and obligation of the Supreme Court to evaluate and resolve the fairness and reasonableness of the settlement, including the amount to be paid, the manner in which the payment obligation is amortized and the parties’ arrangements for payment of costs and attorneys’ fees. Indeed, as drafted both before and after the amendment, the statute provides that the Supreme Court’s written approval constitutes "conclusive evidence of the adequacy of the compromise in any proceeding in the surrogate’s court for the final settlement of the account of [the] administrator or personal representative” (EPTL 5-4.6 [b]). It is difficult to imagine a clearer expression of the Legislature’s intention to leave the power to approve settlements in the hands of the court in which the wrongful death action is pending, in this case the Supreme Court.
 
 [2]
 

 Moreover, even if there had been a contrary legislative intention to transfer authority to approve wrongful-death settlements to the Surrogate’s Court, such an intention could not be implemented, since it would run directly afoul of the existing constitutional allocation of judicial powers. Article VI, § 7 (a) of the State Constitution provides that the Supreme Court "shall have general original jurisdiction in law and equity.” Further, "[i]f the legislature shall create new classes of actions and proceedings, the supreme court shall have jurisdiction over such classes of actions and proceedings”
 
 (id.,
 
 §7[b]).
 

 This means that, with two narrow exceptions,
 
 [3]
 
 the Supreme Court is competent to entertain all causes and to conduct all subsidiary proceedings necessary to determining those causes
 
 (see, Thrasher v United States Liab. Ins. Co.,
 
 19 NY2d 159, 166), including any and all proceedings occurring in the course of a statutorily prescribed wrongful death action
 
 (see, Liff v Schildkrout,
 
 49 NY2d 622). While the Legislature may confer
 
 concurrent
 
 jurisdiction on other courts, it cannot oust the
 
 *339
 
 Supreme Court from jurisdiction or limit the scope of its authority in those actions
 
 (see, Kagen v Kagen,
 
 21 NY2d 532).
 

 Although the Surrogate’s Court is the primary forum for proceedings involving estates and intestacies, the Supreme Court’s inviolate authority to hear and resolve all causes in law and equity unquestionably extends to such matters as well. Indeed, the specific question of the relationship between the power of Supreme Court and those of the Surrogate’s Court has already been definitively addressed in
 
 Matter of Malloy
 
 (278 NY 429, 432), in which this Court stated:
 

 "The Supreme Court is a court of general jurisdiction. It may take the account of a trustee, probate a will, and exercise jurisdiction in many other matters where the Surrogate’s Court also has jurisdiction. The Legislature cannot by statute deprive it of one particle of its jurisdiction, derived from the Constitution (Art. VI), although it may grant concurrent jurisdiction to some other court, as it has done to the Surrogate’s Court.”
 

 As the holding in
 
 Malloy
 
 makes clear, the Supreme Court has the authority to probate a will or distribute an intestate’s assets in accordance with law. A fortiori, it has the
 
 inalienable
 
 power to approve settlements of the wrongful death actions that are commenced and prosecuted before it as well as the power to distribute the proceeds of those settlements, notwithstanding that the Legislature may authorize the Surrogate’s Court to perform one or both of those judicial functions.
 

 It is true, as one commentator has noted that the Surrogate’s Court is the "preferred” forum for determining the proper distribution of the settlement proceeds because "unlike the trial court, all parties interested in the estate,
 
 e.g.,
 
 creditors, distributees [and] the State Tax Commission, * * * are before the [Surrogate’s] court and have an opportunity to be heard” (9A Rohan, NY Civ Prac If 5-4.6 [1], at 5-947). However, the same cannot be said about the determination to approve or disapprove the terms of a wrongful death settlement. As to that determination, it is the Supreme Court, with its superior familiarity with the merits and the litigants, that is better situated to make the necessary assessment.
 
 [4]
 

 Inasmuch as the settlements in this case were not required
 
 *340
 
 to be submitted to Surrogate’s Court for approval, the fact that the Surrogate did not act upon them until after entry of judgment did not vitiate their effect for purposes of applying General Obligations Law § 15-108 (a). Indeed, the contrary view would be inimical to that statute’s over-all goal of encouraging settlements (see,
 
 Williams v Niske,
 
 81 NY2d 437, 443). Accordingly, plaintiff’s argument that there should be no setoff at all was properly rejected.
 

 III.
 

 Since General Obligations Law § 15-108 (a)’s set-off provisions are fully applicable in these circumstances, the only remaining question is how the setoff should be computed in this case. Defendant Einstein contends that the case-by-case or "pick and choose” method should be used. Under that method, which is fully described in
 
 Didner v Keene Corp. (supra),
 
 the amount deducted as a result of the Mancuso-Allen settlement would be $1.1 million (the amount paid in settlement) and the amount deducted as a result of the Sandor settlement would also be $1.1 million (Dr. Sander’s apportioned share of liability). As a consequence, plaintiff’s $2.2 million damage award would be reduced to zero.
 

 For the reasons stated in
 
 Didner v Keene Corp. (supra; see also, Dudick v Keene Corp., supra),
 
 we conclude that the Appellate Division properly rejected this approach in favor of the "aggregate” approach, in which the totaled settlement amounts for all settling defendants are compared with the total of the corresponding apportioned shares and the higher of these totals is deducted from the damage award. We further conclude, however, that the Appellate Division erred in its application of this method to the facts in this case.
 

 The court held that the $50,000 Misericordia settlement amount should not be deducted at all because Misericordia was found free of all liability and "it would not be equitable for the tortfeasor — Einstein—to profit from this settlement at the expense of the injured party” (187 AD2d 217, 220). How
 
 *341
 
 ever, the language of General Obligations Law § 15-108 (a), specifically its reference to released "persons liable or
 
 claimed to be liable
 
 in tort for the same injury, or * * * wrongful death” (emphasis supplied), compels the conclusion that the settlement amount should be deducted even if the party "claimed to be liable” is ultimately exonerated
 
 (see, Bonnot v Fishman,
 
 88 AD2d 650, 651,
 
 affd
 
 57 NY2d 870;
 
 see also,
 
 12th Ann Report of Jud Conf on CPLR,
 
 reprinted in
 
 1974 McKinney’s Session Laws of NY, at 1819). The Misericordia settlement should therefore have been deducted.
 

 Under the aggregate method that we have adopted, the total of all of the settlements ($1.8 million), including the $50,000 Misericordia settlement, should be compared with the total of the apportioned shares ($1,650,000) and the higher amount ($1.8 million) should then be deducted from the $2.2 million awarded, leaving a reduced recovery of $400,000.
 

 We have considered plaintiff’s other contentions and find them to be without merit. Inasmuch as plaintiff did not file a cross appeal, we do not consider his arguments pertaining to interest on the sum awarded.
 

 Accordingly, the order of the Appellate Division should be modified, with costs to plaintiff, by remitting the case to the Supreme Court, Bronx County, for further proceedings in accordance with this opinion and, as so modified, affirmed.
 

 Chief Judge Kaye and Judges Simons, Hancock, Jr., Bellacosa, Smith and Levine concur.
 

 Order modified, etc.
 

 [1]
 

 . The Practice Commentary asserts that the matter "must” be referred to the Surrogate after approval of the compromise (Turano, Supp Practice Commentaries,
 
 op. cit.,
 
 1993 Pocket Part, at 87;
 
 see also,
 
 Legislation Report of Comm on Legislation of Trusts and Estates Law Section of NY St Bar Assn, in Bill Jacket to L 1992, ch 595, at 47 [May 26, 1992]). However, the word "must” does not appear in the amended statute and, in fact, the statute’s grammatical structure leaves little room for doubt that the permissive term "may”, which appears earlier in the same sentence was intended to apply both to the court’s power to "[a]pprove * * * a compromise” and the function of "transferring]” the action to the Surrogate. Thus, it would appear that the 1992 amendment empowers, but does not require, the Supreme Court to transfer the matter to the Surrogate’s Court for allocation and distribution of the proceeds of a compromise and other "related matters.” Significantly, such a view of the statute is necessary in order to avoid any potential conflict with article VI, § 7 of the State Constitution
 
 (see,
 
 at 338-339,
 
 infra).
 

 [2]
 

 . Where the action is pending in a Federal District Court, that court has jurisdiction concurrent with that of the Surrogate’s Court
 
 (see,
 
 Rohan, Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, EPTL 5-4.6, at 595-596, quoting
 
 Matter of Franco,
 
 108 Misc 2d 1084, 1087-1089).
 

 [3]
 

 . The Supreme Court cannot entertain cases in which exclusive jurisdiction has been conferred by Congress on the Federal courts
 
 (e.g.,
 
 28 USC § 1334 [bankruptcy matters]; 28 USC § 1338 [a] [patent and copyright infringement suits];
 
 see,
 
 US Const art VI [Supremacy Clause]). Additionally, the Supreme Court is without power to entertain actions for money damages against the State, which can only be heard in the Court of Claims
 
 (see,
 
 Court of Claims Act §§ 8, 9; Siegel, NY Prac § 12, at 14-15, and n 4).
 

 [4]
 

 . Some courts have expressed the view that the Surrogate’s Court has concurrent power to approve settlements
 
 (see, Matter of Nicastro,
 
 150 AD2d
 
 *340
 
 454;
 
 Matter of DeLong,
 
 89 AD2d 368;
 
 Matter of Holquin,
 
 101 Misc 2d 174). Additionally, the Surrogate’s Courts have historically reviewed settlements as part of their responsibility to supervise the activities of court-appointed fiduciaries
 
 (see, e.g., Matter of Leopold,
 
 259 NY 274). We do not here intend to suggest that the Surrogates may not, under any circumstances, review settlements of actions and proceedings originating in other courts. We hold only that referral to the Surrogate’s Court for review of the settlement terms is not mandatory.