*667 OPINION OF THE COURT
Francis T. Collins, J.
The motion of the defendant* for an order pursuant to CPLR 3212 granting it summary judgment dismissing the claim for lack of merit based upon the application of General Obligations Law § 15-108 (c) is denied and claimants are granted summary judgment dismissing the second affirmative defense set forth in the amended answer (CPLR 3212 [b]). The motion of the defendant for an order pursuant to CPLR 3124 precluding the claimants from offering any proof at trial with regard to the matters addressed by the combined discovery demands and written interrogatories, both dated December 5, 1997, unless the claimants provide the information sought by the combined demands and serve answers to the written interrogatories, is denied.
The claim, filed on August 16, 1994, seeks contribution from the State of New York for amounts paid by claimants in connection with a personal injury lawsuit brought by Robert and Carol Plummer as the result of an incident that occurred on July 10, 1990. The second affirmative defense in the amended answer alleges that the claim is barred by General Obligations Law § 15-108. A Trial Term note of issue was filed on November 21, 1997 and the claim is scheduled for trial commencing on May 5, 1998. Claimants and defendant seek to have the viability of the General Obligations Law affirmative defense determined as a matter of law, and to that end have submitted a stipulation of facts which provides as follows:
“The undersigned hereby stipulate to the following relevant facts as material to respondent’s motion for summary judgment seeking dismissal of all claims:
“1. On or about July 10, 1990, Robert J. Plummer was allegedly injured while working within the scope of his employment on a road crew for his employer, the New York State Department of Transportation, on Interstate 81 at the intersection of State Route 12 in Alexandria, New York, Jefferson County when he was struck by an automobile allegedly driven by Marian L. LeFevre, claimant herein, and insured by claimants Utica Mutual Insurance Company and Preferred Mutual Insurance Company.
“2. Robert J. Plummer and his wife Carol A. Plummer commenced a personal injury action in Jefferson County Supreme Court in or about December, 1990, Index Number 92-2740, *668 against the aforesaid Marian L. LeFevre. A copy of the subject Complaint is annexed hereto and incorporated herein as Exhibit ‘A’. A copy of defendant’s Answer in that action is annexed hereto and incorporated herein as Exhibit ‘B’.
“3. Trial in the Plummer v. LeFevre action commenced on September 13, 1993 before the Honorable Hugh A. Gilbert.
“4. The jury rendered a verdict in that case on September 17, 1993, finding defendant liable and awarding a cumulative damage award to the Plummers in the total amount of $1,043,000.00. Relevant pages of the trial transcript wherein the verdict was read are annexed hereto and incorporated herein as Exhibit ‘C’.
“5. By Order dated November 18, 1993, a copy of which is annexed hereto and incorporated herein as Exhibit ‘D’, the Court denied the motion of defendant under C.P.L.R. section 4404 to set aside the verdict and for a new trial. In that Order, the Court ordered the parties to report by December 7, 1993, ‘as to what further Court proceedings might be required regarding any collateral source adjustments or statutory structuring of the verdict as to the award for future damages.’
“6. On or about December 8, 1993 Marian L. LeFevre filed a Notice of Appeal of the above Order, a copy of which is annexed hereto and incorporated herein as Exhibit ‘E’. The appeal was never perfected.
“7. The parties entered into discussions in an effort to settle such collateral source adjustments and statutory structuring, as reflected in a stipulation entered into by the attorneys for the parties on or about January 31, 1994, a copy of which is annexed hereto and incorporated herein as Exhibit ‘F’. According to the subject stipulation, the parties reached agreement on six items, but were unable to agree as to five remaining issues which were to be submitted to the Court. However, no judicial determination of these collateral source adjustments and statutory structuring issues was ever rendered.
“8. On or about June 1, 1994, prior to the hearing and disposition of the appeal, and prior to any collateral source hearing pursuant to CPLR 4545 or statutory structuring and prior to any judgment being signed or entered under CPLR 50-B, the parties entered into a structured Settlement Agreement and Release, a copy of which is annexed hereto and incorporated herein as Exhibit ‘G’, wherein Robert and Carol Plummer agreed to release defendant Marian L. LeFevre from liability in exchange for the payment of $725,000.00 from Utica Mutual *669 Insurance Company and Preferred Mutual company, in complete settlement of all claims.
“9. Paragraph 8 of the subject Release called for the delivery by plaintiffs to the insurers of an executed Stipulation of Discontinuance with prejudice. That Stipulation of Discontinuance was never filed; however, the Settlement Agreement and Release was filed on or about June 8, 1994.
“10. In this action claimants seek only contribution. No indemnification cause of action is asserted. A copy of the Claim in this action is attached hereto as Exhibit TT and Respondent’s Amended Answer is attached hereto and incorporated herein as Exhibit T.”
In the case of Dole v Dow Chem. Co. (30 NY2d 143), the Court of Appeals departed from common-law principles in recognizing a cause of action by one joint tortfeasor against another for an equitable apportionment of liability. Following Dole, the Fourth Department in the case of Blass v Hennessey (44 AD2d 405) held that a contribution claim could be asserted by one tortfeasor against a cotortfeasor that had settled with the injured party. The Legislature recognized that this practice would discourage the settlement of lawsuits and enacted the current version of General Obligations Law § 15-108 (L 1972, ch 830, as amended by L 1974, ch 742). The contribution cause of action first recognized in Dole was subsequently codified in CPLR article 14 (L 1974, ch 742).
In the case of Rock v Reed-Prentice Div. of Package Mach. Co. (39 NY2d 34, 41), the Court of Appeals explained the operation of General Obligations Law § 15-108 as follows:
“Subdivision (a) permits a plaintiff to settle with a defendant without risking the discharge of other tort-feasors who might be liable for the injury. Under prior law this had been subject to some ‘uncertainty (see Report of Law Revision Commission, NY Legis Doc, 1972, No. 65[K]).
“Subdivision (b) permits a defendant to settle with plaintiff without fear of being brought back into the action by another defendant seeking contribution. Under prior law this ‘had become troublesome after the decision in Dole v Dow Chemical Co.’ (McLaughlin, Practice Commentary, McKinneys Cons Laws of NY, Book 23A, General Obligations Law, § 15-108).
“Subdivision (c) provides that a ‘tortfeasor who has obtained his own release from hability shall not be entitled to contribution from any other person’. There is no indication what problem this subdivision was intended to eliminate (see Mc *670 Laughlin, Practice Commentary, McKinney’s Cons Laws of NY, Book 23A, General Obligations Law, § 15-108). Apparently the Legislature felt that surrender of the right to contribution is a small price to ask of a defendant who is intent on avoiding litigation. In our view, however, it has no application to a claim for contribution which has been litigated and reduced to judgment.
“The overall scheme and purpose of the section is to promote settlements in multiple-party tort cases by clearly defining the effect the settlement will have on collateral rights and liabilities in future litigation.”
In the case of State of New York v County of Sullivan (54 AD2d 29, revd 43 NY2d 815), Victor Sacks was seriously injured in a motor vehicle collision and a claim was pursued in the Court of Claims against the State for negligent maintenance of a highway. A judgment was entered against the State in favor of Sacks in the sum of $1,026,195.83. The State appealed and eventually settled the claim at the reduced figure of $875,000 in return for withdrawing its appeal. The State then commenced an action for indemnification and contribution against the Town of Thompson and the County of Sullivan in Supreme Court. The County moved to dismiss contending that the contribution claim was barred by General Obligations Law § 15-108 (c). The State argued that the subdivision did not apply as its liability had already been determined by the entry of a judgment and cited the Rock case (supra) in support of its position. The County argued in response that the plain language of subdivision (c) applied to any tortfeasor who obtained his own release from liability whether before or after the entry of a money judgment. The majority of the Appellate Division adopted the County’s position. Presiding Justice Koreman dissented reasoning (at 35) that: “Here, the State has not obtained its own release from liability. Rather, after the State’s liability was fixed by the Court of Claims, it proceeded to satisfy that liability by paying and discharging the judgments that were predicated thereon”.
The Court of Appeals reversed the Appellate Division upon the dissenting opinion of Presiding Justice Koreman thus interpreting General Obligations Law § 15-108 (c) as resulting in the loss of a contribution claim if the settling tortfeasor obtained his release prior to the entry of judgment but not thereafter. In 1984, some eight years after the County of Sullivan case (supra), the Second Department issued its opinion in Makeun v State of New York (98 AD2d 583). In Makeun, Marion *671 Thorp was injured when her vehicle left the road and struck a tree located upon property owned by Floyd Makeun. Thorp sued Makeun in Supreme Court and he in turn asserted a third-party action against the driver of the vehicle, Linda Thorp. The trial was bifurcated and the jury returned a verdict in favor of the plaintiff determining that Makeun was 65% responsible for the accident and Linda Thorp was 35% responsible. During the trial of the damage issue Makeun settled the action and received a release in his favor in return for payment to Marion Thorp of $250,000. A judgment in that sum was entered. Makeun then commenced a claim in this court against the State for indemnification or contribution. The State moved for summary judgment dismissing the contribution claim as barred by General Obligations Law § 15-108 (c). Makeun opposed the motion arguing that subdivision (c) did not apply because the settlement did not take place until after the entry of judgment upon the liability issue. Judge Lengyel granted the State’s motion holding that, “ ‘in the instance of GOL 15-108 (c), unless culpability and damage (i.e., liability) are fully and finally determined by either a court or a jury; and, judgment entered upon that determination, contribution cannot be obtained’ ” (supra, at 586). The Appellate Division affirmed upon a determination that “[t]he legislative intent of not allowing a volunteer to recover an excess paid by him leads us to conclude that the concept of ‘liability’ in section 15-108 of the General Obligations Law must include a determination of culpability and damages” (supra, at 591).
The foregoing statutory and judicial history sets the stage for the issue to be determined here. Relying upon the Makeun decision (supra), defendant argues that since a money judgment had not been entered at the time that the claimants settled the Supreme Court action General Obligations Law § 15-108 (c) bars their contribution claim. Defense counsel posits that a damage claim cannot be deemed fixed until the tortfeasor knows exactly the amount necessary to satisfy the legal obligation to pay, and points out that there were still 12 collateral source issues to be resolved, as well as CPLR article 50-B calculations to be made, at the time the settlement was entered into.
Citing the County of Sullivan case (supra) and Rohring v City of Niagara Falls (84 NY2d 60), claimants contend that a tortfeasor’s obligation to pay becomes fixed for purposes of General Obligations Law § 15-108 (c) at the time that a finder of fact renders a verdict or award for liability and damages. *672 Claimants aver that CPLR articles 50-A and 50-B are technical administrative schemes designed to regulate and structure payment and cannot operate to increase the amount owed by a tortfeasor after the rendition of the verdict or award. Claimants refer to the language of Rohring (at 70) that “[a] defendant’s obligation to a personal injury plaintiff encompasses both past and future damages and becomes fixed as of the date of the liability verdict”. Thus, claimants offer the time of the award or verdict of damages as the bright line date for determining the loss of a contribution cause of action due to a tortfeasor’s obtaining his own release, while defendant offers the time of the entry of judgment as critical.
Issues of public policy induce the court to accept claimants’ position. First and foremost, public policy has long been to encourage and facilitate settlements (Randall Elec. v State of New York, 150 AD2d 875, 876). In fact, with reference to the issue at hand, the Court of Appeals recognized in Rock v Reed-Prentice Div. of Package Mach. Co. (39 NY2d 34, 40-41, supra) that the specific purpose of General Obligations Law § 15-108 is to promote settlement of multiparty tort cases and “to encourage settlements by altering or eliminating certain rules of prior law which had an inhibiting effect on the settlement process”. Secondly, it is the policy of the courts to avoid practices that strain judicial resources (see, Buckley v National Frgt., 220 AD2d 155, affd 90 NY2d 210). General Obligations Law § 15-108 was enacted to strike a balance between the sometimes competing policies of providing for equitable sharing of liability among tortfeasors and encouraging settlement (Mitchell v New York Hosp., 61 NY2d 208, 215). In part, the legislative intent underlying the enactment of subdivision (c) is “to preserve judicial resources” (supra, at 216). As a result, an interpretation of subdivision (c) which would discourage settlement, strain judicial resources and increase the time and expense of litigation is to be avoided if possible. Defendant’s construction of the statute would secure the foregoing result and is not compelled by appellate precedent.
This court’s research has failed to disclose an appellate case in which the court had to decide the applicability of General Obligations Law § 15-108 (c) to a fact pattern where a tortfeasor obtained his release after the finder of fact rendered an award or verdict upon both liability and damages but prior to the entry of judgment. In Williams v Weiser (175 Misc 2d 289), the only reported trial level decision which has addressed the issue, the position that entry of judgment was the critical event *673 for the purpose of determining whether a right to contribution has been preserved by a settling tortfeasor under General Obligations Law § 15-108 (c) was rejected. Plaintiff in that case was a passenger in a vehicle owned by his employer and was injured in a collision with another vehicle. He sued the owner and driver of the other vehicle who in turn asserted third-party claims against plaintiff’s employer and the operator of his vehicle. The action proceeded to trial and the jury rendered a verdict in the total sum of $2,393,533.82 in favor of plaintiff and apportioned fault equally between defendants and third-party defendants. The third-party defendants’ motion to set aside the verdict was denied and the defendants’ motion for the same relief was granted to the extent of ordering a new trial unless plaintiff consented to a reduced verdict of $300,000 for future pain and suffering and $257,600 for future medical expenses. The plaintiff stipulated to those reductions.
On March 27,1997, the Trial Judge signed a judgment which set forth the jury’s verdict, the reduced amounts for future pain and suffering and medical expenses and an offset for workers’ compensation payments. The judgment further indicated that the verdict had been adjusted pursuant to CPLR article 50-B to reflect total amounts but the calculations for yearly payments and other specifics had not yet been performed. The judgment was in the sum of $1,676,604. Prior to entry of the judgment, defendants and plaintiff entered into a settlement for the sum of $1,400,000. During April of 1997, the defendants paid $1,400,000 to plaintiff and received a satisfaction of judgment. The judgment was not entered until August 25, 1997. The third-party defendants sought dismissal of the contribution claim upon the argument “that defendants have waived any rights to contribution by settling with the plaintiff prior to entry of judgment, citing General Obligations Law § 15-108 (c) and the case of Rock v Reed-Prentice Div. of Package Mach. Co. (39 NY2d 34 * * *)” (Williams v Weiser, 175 Misc 2d 289, 291, supra). In rejecting that argument, Mr. Justice Green determined that, “[w]hile the judgment in Rock had apparently been entered prior to the settlement between the plaintiff and defendant, contrary to third-party defendants’ contention, the decision does not suggest that entry of the judgment was critical” (Williams v Weiser, supra, at 292). Instead, Mr. Justice Green determined that a tortfeasor who settles after a determination of liability and damages, in which a judgment has been executed even though the CPLR article 50-B calculations were incomplete, had not waived his right to contribution.
*674 The reasoning in Williams (supra) is persuasive in that it is consistent with the “statute’s over-all goal of encouraging settlements” (Pollicina v Misericordia Hosp. Med. Ctr., 82 NY2d 332, 340). In order to encourage settlements, there should be a bright line event that attorneys and litigants can rely on in deciding whether a settlement will result in the loss of a right to contribution. In this court’s view, that event should be the rendering of an award or verdict by the trier of fact upon the issues of liability and damages. At that point in time, the greatest potential exposure of the tortfeasor is established. The subsequent reduction in a tortfeasor’s monetary liability, if any, resulting from collateral source payments and CPLR article 50-B calculations will not increase that exposure. Indeed, they are designed to do the opposite. The adoption of a rule of law that would require the completion of the collateral source and CPLR article 50-B process prior to a tortfeasor being able to settle without the loss of a contribution cause of action will only serve to discourage settlements, strain judicial resources and delay and increase the expense of every affected civil judicial proceeding.
“CPLR 5041 has been described as ‘circuitous’ (Singletary v Three City Ctr., 158 Misc 2d 841, 846), posing a ‘vexing philosophical problem’ (Marulli v Pro Sec. Serv., 151 Misc 2d 1077, 1080) and ‘every Judge’s nightmare’ (Rohring v City of Niagara Falls, 153 Misc 2d 1001, 1002 * * *)” (Reed v Harter Chair Corp., 196 AD2d 123, 125). Completion of the CPLR articles 50-A and 50-B hearing and calculations is daunting to the practicing Bar and Bench and its very complexity and potential expense serve at the present time as a strong impetus to settle a claim or action once the trier of fact has rendered its verdict or award on liability and damages. In the great majority of cases, once the damage verdict or award is rendered the case is settled without embarking into the CPLR articles 50-A and 50-B domain. Adopting defendant’s position would alter that practice and would not further the legislative purpose underlying General Obligations Law § 15-108.
As to the request for relief pursuant to CPLR 3124, once a note of issue and certificate of readiness is filed no further discovery is permitted unless “unusual or unanticipated circumstances develop subsequent to the filing * * * which require additional pretrial proceedings to prevent substantial prejudice” (22 NYCRR 206.12 [c]). When a litigant “had an adequate opportunity to conduct discovery prior to the filing of the note of issue to develop evidence” and fails to do so it is *675 inappropriate to permit post note of issue disclosure (Simpson v K-Mart Corp., 245 AD2d 991, 992 [3d Dept, Dec. 31, 1997]). The disclosure defendant now seeks relates to posttrial documents from the Supreme Court action. The need for those documents has been apparent since the outset of this litigation. The claim has been pending since August of 1994 and the note of issue was not filed until November of 1997. There is no explanation in the record as to why the defendant did not seek discovery in the three years and three months between the commencement of the claim and the filing of the note of issue. Indeed, the discovery requests were not even served until December of 1997. Defense counsel has not established any unanticipated or unusual circumstances that have occurred since the filing of the note of issue which would warrant post note of issue disclosure.

 The caption has been amended to denominate the State of New York as the defendant, not the respondent.