OPINION OF THE COURT
David Goldstein, J.
I
The issue is whether the decedent’s adult, disabled child, who is physically and possibly mentally challenged, should receive a distributive share of her father’s wrongful death proceeds, especially where, as here, the condition of the child was used to gain a larger settlement in the amount of $1,099,000.
II
This is an ex parte application to approve a wrongful death settlement and to distribute the proceeds.
The action was brought to recover for the death of the decedent on January 14, 1993, and for the pain and suffering experienced during the six-month period he lingered in the hospital, for the most part, in a comatose condition after surgery in July 1992. Defendants are charged with malpractice in failing to properly treat pneumothorax and, during a closed thoracoscopy, allowing the rupture or tearing of pleural adhesions, which collapsed the lung and caused bleeding and mas-; sive brain damage. This resulted in the patient lapsing into a coma, which lasted until his death six months later.
Decedent, who was 66 years of age, is survived by his wife, then age 61, and their adult daughter, age 39, who is both blind and schizophrenic. The extent of the mental or psychiatric condition of the child, and any necessary treatment, has not been disclosed. Nor does the record set forth the extent and nature of the dependency attributable to any disability in terms of pecuniary loss.
Although, during settlement negotiations, the condition of the child and the loss experienced by her were relied upon and, in part, resulted in a higher settlement, this is not at all apparent from the compromise papers which have been submitted. Instead, the papers submitted operate to mask the role of the child in terms of pecuniary loss. For example, the nature of the child’s relationship is not discussed; nor has it *395 been disclosed, directly, that the child lived with her parents and continues to live with her mother. All that is set forth is the mother’s statement that “[m]y husband contributed his entire income to support me and our household” (emphasis added). As far as appears, the latter reference is to the child. However, wholly unaddressed is the entitlement of the adult, disabled child to a distributive share. And, although the child’s consent has been offered, it does not appear whether she was fully apprised of her rights. Further, in view of what has been submitted, there is a real issue here whether the daughter’s interests are not properly represented so as to warrant appointment of an independent guardian ad litem.
Ill
The Supreme Court is empowered to approve or disapprove the compromise of a wrongful death action (EPTL 5-4.6 [a] [1]). In the alternative, the statute empowers, but does not require, transfer of the matter to the Surrogate’s Court to determine “the issues of allocation and distribution of proceeds and related matters,” after the compromise has been approved. (Pollicina v Misericordia Hosp. Med. Ctr., 82 NY2d 332, 337.)
While the Surrogate’s Court has concurrent power to approve wrongful death settlements (Pollicina v Misericordia Hosp., supra at 338-340; Matter of Nicastro, 150 AD2d 454; Matter of DeLong, 89 AD2d 369), undisturbed is the Supreme Court’s inalienable, constitutional power to compromise and approve such settlements and “to distribute the proceeds” (Pollicina v Misericordia Hosp., supra at 339; see also, Matter of Malloy, 278 NY 429, 432). This power exists, notwithstanding that certain interested parties such as creditors, distributees and the State Tax Commission are not before this court. Thus, while the Legislature may confer concurrent jurisdiction upon the surrogate, it may not oust the Supreme Court of its jurisdiction, nor limit the extent or scope of its authority.
As was recognized in Pollicina (supra), the Surrogate’s Court is peculiarly suited to administer the proceeds of an approved settlement and is the “preferred” forum (Pollicina v Misericordia Hosp., supra at 339). Of significance is the fact that the State Tax Commission, creditors and distributees are already before the Surrogate. However, as noted, while the Legislature may create a court with concurrent jurisdiction, it may not oust this court of its jurisdiction, nor limit its authority. (Id. at 338-339.) Insofar as concerns the absence of the above parties, the Court of Appeals in Pollicina did not *396 resolve whether such additional interested parties must be joined where the Supreme Court elects to approve the settlement and distribute the proceeds. No decision has squarely considered the issue, albeit the Court in Pollicina did address, but did not decide the matter. In my view, such parties need not be joined, except, of course, those descendants who would be entitled to a distributive share under existing rules.
In terms of distribution of wrongful death proceeds, the earliest reported decision is Matter of Kaiser (198 Misc 582), wherein the court directed distribution to the spouse and next of kin “in proportion to the pecuniary loss sustained.” (Id. at 583.) On the surface, this would permit the use of actuarial tables to compute the relative period each distributee would look to the decedent for support, with distribution in accordance with the proportional share of each. Although what has become known as the Kaiser formula (which has been used for more than half a century) has been criticized as far too rigid, the Kaiser court itself recognized that other factors were to be considered, including,
“the ages and mental and physical condition of [the decedent’s] descendants and whether such of them as may be infants at the time of the death of the decedent may be expected to pursue normal occupations on reaching majority or, whether because of physical or mental ailment or otherwise, they would be dependent on decedent beyond the age of twenty-one years.” (Matter of Kaiser, supra at 584.)
In Matter of Acquafredda (189 AD2d 504), decedent was survived by his wife, age 19, and two children, one two years old and the other born several months after his death. The wife remarried four years thereafter and had three children with her second husband. The Appellate Division, Second Department, in a learned opinion by Justice Rosenblatt (now Judge of the Court of Appeals), discussed Kaiser and its progeny and affirmed the Surrogate’s determination, which had allocated equal shares among the three distributees. The allocation there, however, resulted from uncertainty as to the financial future of the children, created by the mother’s remarriage and her new family unit. Thus, the Court found the “departure from Kaiser * * * within the boundaries of an informed discretion,” observing:
“Experience has shown that there may be variations and factors calling for equitable adjustments to relax an otherwise inelastic application of Kaiser *397 (supra). Its ‘years of dependency’ formula is not brittle, but malleable, and not beyond the exercise of the court’s sound discretion.” (189 AD2d at 517.)
While there are but a few reported decisions, consideration has been accorded to disabled and incompetent children, both minors and adults (see, Matter of Heindel, 51 Misc 2d 26 [decedent’s minor son, a cerebral palsy victim, bedridden and unable to write or speak, awarded a 70% distributive share]; Matter of Smith, 235 NYS2d 414 [incompetent minor child, residing at Willow Brook State School, held entitled to support beyond majority]; Matter of Washington, 16 Misc 2d 577 [adult, incompetent daughter awarded a distributive share of wrongful death proceeds]).
In Matter of Duffy (208 AD2d 1169), the Appellate Division, Third Department, affirmed a decree of the Rockland County Surrogate, which had allocated the settlement proceeds of a wrongful death action equally among decedent’s nine children, who ranged in age from 19 to 30. In doing so, the Third Department recognized that “adult children are not precluded from sharing in wrongful death proceeds * * *” (supra at 1170).
IV
Insofar as applicable here, it is patently clear that the physical disability of the adult child and her dependence upon the decedent for support should entitle her to a distributive share. As noted, the extent of her mental or psychiatric condition has not only not been disclosed or discussed, it has been withheld in papers which seem to mask the role of the child in terms of pecuniary loss. Nor is there any mention that the condition of the child and loss sustained by her were used to gain a larger settlement. Also, although the consent of the daughter has been submitted, undisclosed is whether she was fully apprised of and actually understood her rights. Nor is the purported consent proper in form, since it is not properly executed. In the absence of the notary’s identification number and the expiration date of his commission, the consent is invalid.
In my view, the amount of the settlement is both fair and reasonable, and is approved, consistent with this court’s statutory authority and responsibility. (EPTL 5-4.6 [a] [1]; Pollicina v Misericordia Hosp., supra at 337-338.) While I have no doubt that the child is entitled to a sizeable distributive share in view of her physical condition and her financial dependence, unknown is the extent of her psychiatric or mental condition. *398 This should require a hearing, which may be extensive. Plainly, the Surrogate’s Court is particularly suited to hold such hearing as may be necessary to administer the proceeds of the approved settlement, i.e., to determine “the issues of allocation and distribution of proceeds and related matters” (EPTL 5-4.6 [a] [1]; Pollicina v Misericordia, 82 NY2d 332, 337, supra).
This is critical here, especially in light of the apparent lack of independent representation accorded to the child, in terms of advice, counseling and legal representation. Although an adult, disabled child may share in the distribution of wrongful death proceeds, here, there is no reference to such potential entitlement. On the surface, it does not appear that the child has been adequately represented. At the least, the situation may have created a conflict of interest which should have warranted some inquiry. For that purpose, Madaleine S. Egelfeld, Esq., 125-10 Queens Boulevard, Kew Gardens, New York 11415, (718) 544-6363, is appointed guardian ad litem of the adult child, Vivian Conejero, in any proceedings to be conducted before this court and/or the Surrogate, including the issue of the legal representation of Ms. Conejero, if separate counsel is deemed to be necessary by the Surrogate. This, of course, is subject to further order of the Surrogate.