OPINION OF THE COURT
Lee L. Holzman, J.
In this proceeding to judicially account for the settlement proceeds obtained pursuant to an order of the Supreme Court, Bronx County (McKeon, J.), dated October 1, 2009, the New York City Department of Social Services (DSS) moves, in effect, for an extension of time to file objections to the account as it neither appeared nor filed objections on April 14, 2010, the return date of the citation that was served upon it. On April 22, 2010, DSS served and filed a notice of motion, returnable May 5, 2010, seeking “to restore” the matter to the court’s calendar. The administrator, one of the decedent’s nine children, opposes the motion.
The only item listed in schedule A of the account of the administrator is the sum of $300,000, in settlement of causes of action alleging wrongful death and personal injury. In the October 1, 2009 Supreme Court order, the $300,000 settlement was approved, the entire settlement proceeds were allocated to the wrongful death cause of action, and the personal injury and wrongful death causes of action were discontinued. The citation served upon DSS in this proceeding sought to disallow the claim of DSS, in the sum of $87,903.76, or such other amount as it may claim, on the ground, inter alia, there are no estate assets to satisfy said claim.
In regard to its failure to timely file objections to the account, DSS pleads law office failure. The administrator argues that because DSS was not only personally served, but also faxed and mailed copies of the citation, the motion should be denied. In essence, the administrator contends that DSS failed to demonstrate a reasonable excuse for the delay and a meritorious claim. The court will treat DSS’s application as a motion to be excused for its failure to file timely objections and for an extension of time to file objections to the account.
*679 After the expiration of the time fixed to file a pleading, the court may extend the time to file it (see CPLR 2004), in the interests of justice, notwithstanding that the default was caused by law office failure, provided that the application satisfies the requirements of CPLR 3012 (d) (see CPLR 2005). Here, DSS moved promptly, and prior to the entry of a decree or order, to rectify its failure to interpose timely objections to the account, and the default was neither willful nor did it prejudice the administrator. Nonetheless, the objections DSS plans to file herein will be without merit unless the October 1, 2009 Supreme Court order, dismissing the personal injury action and allocating the entire recovery to the wrongful death action, is modified. This is so because wrongful death damages recovered belong to the decedent’s distributees, individually, for the pecuniary injuries suffered by them as a result of the decedent’s death (see EPTL 5-4.1 [1]; 5-4.3 [a]; George v Mt. Sinai Hosp., 47 NY2d 170, 176 [1979]); however, if a portion of the recovery is allocated to the decedent’s conscious pain and suffering, this portion is an estate asset subject to DSS’s claim (see Matter of Buscemi, 32 AD3d 1021 [2006]).
EPTL 5-4.6 was amended in 2005 to facilitate, after the Supreme Court approves the amount of a wrongful death compromise, the expeditious payment of counsel fees and funeral and medical expenses incurred as a result of the acts causing the wrongful death, while holding in abeyance issues as to allocation and distribution, which are to be determined in a Surrogate’s Court proceeding after jurisdiction is obtained over all the parties affected by a determination of those issues. Specifically, EPTL 5-4.6 (a) grants authority to the Supreme Court to approve the amount of damages and subdivision (d) provides that such determination is conclusive as to the adequacy of the compromise. On the other hand, subdivision (a) (2) envisions that a proceeding will be commenced in the Surrogate’s Court for allocation and distribution of the settlement proceeds.
In most cases, the statute appears to work as intended. Nonetheless, the matter sub judice illustrates the issues that can arise where the Supreme Court, without notice to potential creditors of the estate, allocates the entire settlement proceeds to wrongful death. EPTL 5-4.6 does not contain any provision governing the persons over whom jurisdiction should be obtained in those instances where the Supreme Court order directs an allocation. In any event, prior to the entry of the October 1, 2009 order the administrator did not request that *680 any notice be given to DSS of the proposed wrongful death allocation.
This set of circumstances leaves both DSS and this court in a quandary. The Surrogate’s Court lacks jurisdiction to modify orders entered by other courts. Nonetheless, in this case, DSS, in effect, represents the taxpayers of New York City and it never had the opportunity to be heard on the issue of allocation. The administrator, who benefits from the wrongful death allocation, drafted the order requesting the allocation embodied in the October 1, 2009 order of the Supreme Court. Furthermore, the administrator does not allege that he disclosed to the Supreme Court in his EPTL 5-4.6 application that DSS had a claim which it would be unable to recover in the event that the entire settlement proceeds were allocated to wrongful death.
As a general rule, where a compromise is contemplated, the defendant is concerned only about the total amount that is to be paid to settle all of the causes of action alleged in the complaint and could not care less about the allocation of the settlement proceeds between the wrongful death and personal injury causes of action. It is only in the exceptional case, such as where a statute or insurance policy limits liability to an amount less than the proposed settlement amount except in wrongful death cases, that a defendant might insist upon a certain allocation prior to consenting to the total amount of the settlement. It appears that the broad solution to the problem presented herein is that, as a general rule, where the complaint alleges both wrongful death and personal injury causes of action, the Supreme Court order should only authorize the amount of the settlement for both causes of action and leave all allocation issues to the Surrogate’s Court for determination after jurisdiction is obtained over all necessary parties in an accounting proceeding (see EPTL 5-4.6 [a] [2]; Conejero v LaJam, 190 Misc 2d 393 [2002], citing Pollicina v Misericordia Hosp. Med. Ctr., 82 NY2d 332, 337 [1993]).
Turning to the narrow issue presented, the court will hold both the accounting proceeding and the instant motion in abeyance so that DSS may move in the Supreme Court for such relief as it deems appropriate. Specifically, DSS might seek solely, or in the alternative, any of the following relief in the Supreme Court: (1) reconsideration of the allocation issue by that court; (2) vacatur of the allocation portion of that court’s order and transfer of that issue to this court (see CPLR 325 [e]); or (3) other similar relief.
*681 At present, the October 1, 2009 order makes any grant of leave to DSS to file late objections in the accounting proceeding pointless because, in light of the wrongful death allocation, such objections would have to be dismissed on the ground that DSS has no right to recover from the decedent’s distributees, individually, for services provided to the decedent (see Matter of Buscemi, 32 AD3d at 1021). Consequently, in the event that DSS fails to present an appropriate application to the Supreme Court by July 12, 2010, the administrator’s counsel may, upon the submission of an affirmation stating that he has not been served with papers in connection with the Supreme Court order, settle an order denying the motion.