■ In the Matter of the Estate of KEVIN W. STANLEY, Deceased. DIANE R. STANLEY, as Executrix of KEVIN W. STANLEY, Deceased, Appellant; LAWRENCE J. MATTAR, ESQ., as Guardian ad Litem for ASHLEY STANLEY, a Minor, et al., Respondents. In

the Matter of the Estate of KATHLEEN A. STANLEY, Deceased. RICHARD T. STANLEY, as Administrator of the Estate of KATHLEEN A. STANLEY, Deceased, Appellant; LAWRENCE J. MATTAR, ESQ., as Guardian ad Litem for ASHLEY STANLEY, a Minor, et al., Respondents. (Appeal No. 1.) [914 NYS2d 476]—

Appeals from an order of the Surrogate's Court, Erie County (Barbara Howe, S.), entered July 7, 2009. The order, among other things, directed that the applications filed by petitioners on June 11, 2009 shall go forward.

It is hereby ordered that the order so appealed from is unanimously affirmed without costs.

Memorandum: These proceedings arise out of the crash of a small plane in Florida in which Kevin W. Stanley and his mother, Kathleen A. Stanley (collectively, decedents), were killed. Decedents were both residents of New York State at the time of the plane crash. Kevin Stanley was survived by his wife, petitioner Diane R. Stanley, who was named executrix of his estate, and two minor children, Kathryn Stanley and Ashley Stanley. Kathleen Stanley was survived by her husband, petitioner Richard T. Stanley, who was named administrator of her estate. Petitioners commenced a wrongful death action in the Circuit Court, Seventh Judicial Circuit in and for Volusia County, Florida (hereafter, Florida Court) against, inter alia, the owner and lessor of the plane. The parties ultimately entered into a "Mediated Settlement Agreement" (Agreement), pursuant to which the defendants agreed to pay certain sums to

petitioners "[s]ubject to and conditioned upon the approval of the Surrogate of Erie County, NY [and] . . . the approval of the [Florida Court]."

Petitioners thereafter filed wrongful death petitions in Surrogate's Court seeking, inter alia, to compromise the Florida wrongful death action, and respondents guardians ad litem were appointed for the minor children. While the petitions were pending, the Florida Court granted petitioners' motion to "Approve Wrongful Death Claim Involving the Interests of Minors." Petitioners subsequently contended that the Florida Court order was entitled to full faith and credit and that the only matter left for the Surrogate to determine was whether appropriate investment vehicles were in place for the settlement allocations to the minor children. The guardians ad litem, however, contended that the express terms of the Agreement required the Surrogate to approve the settlement and that the Surrogate must make her own determination regarding, inter alia, the adequacy of the settlement.

Addressing first the order in appeal No. 2, we conclude that the Surrogate properly denied petitioners' request to limit her role and that of the guardians ad litem in these proceedings. Contrary to petitioners' contention, the Full Faith and Credit Clause of the US Constitution (US Const, art IV, § 1) does not bar the Surrogate's review of the settlement in accordance with the terms of the Agreement. Here, the parties to the wrongful death action, including petitioners, explicitly and unambiguously conditioned their settlement upon the approval of both the Florida Court and the Surrogate. Contrary to petitioners' further contention, the Agreement does not limit the Surrogate's role in approving the settlement or require the Surrogate to defer to the Florida Court's determination concerning the appropriateness of the settlement. Although petitioners correctly note that a contract cannot confer jurisdiction upon a court where such jurisdiction does not otherwise exist (*see Matter of Newham v Chile Exploration Co.*, 232 NY 37, 42 [1921], *rearg denied* 234 NY 537 [1922]; *Matter of Hyatt Legal Servs.*, 97 AD2d 983 [1983]), here the Surrogate has concurrent jurisdiction to approve the settlement (*see* EPTL 5-4.6; *see generally Pollicina v Misericordia Hosp. Med. Ctr.*, 82 NY2d 332, 339 [1993]; *Matter of DeLong*, 89 AD2d 368 [1982], *lv denied* 58 NY2d 606 [1983]; *Conejero v LaJam*, 190 Misc 2d 393, 395 [2002]). Thus, the Agreement does not attempt to "confer" jurisdiction on the Surrogate but, rather, the parties requested, as a condition of their settlement, that the Surrogate exercise her concurrent authority to approve the settlement.

Moreover, we conclude that the Surrogate's independent review of the settlement does not fail to afford " 'credit, validity, and effect' " to the orders of the Florida Court (*Underwriters Nat. Assurance Co. v North Carolina Life & Accident & Health Ins. Guaranty Assn.*, 455 US 691, 704 [1982]). That court approved the settlement in accordance with Florida law and the Agreement (*see* Fla Stat Ann, tit 43, § 744.387 [3] [a]; tit 45, § 768.25). The Surrogate is reviewing the settlement pursuant to New York law as authorized by statute and required by the Agreement. We reject petitioners' contention that the Florida Court's approval of the settlement is "conclusive evidence" of the adequacy thereof (EPTL 5-4.6 [d]), inasmuch as the wrongful death action was not commenced in New York.

With respect to the order in appeal No. 1, we conclude that the Surrogate properly denied petitioners' requests to withdraw the wrongful death petitions and to discontinue the proceedings. Pursuant to CPLR 3217 (a), "[a]ny party asserting a claim may discontinue it without an order . . . by serving upon all parties to the action a notice of discontinuance" within a certain time period. Here, although petitioners' notices of discontinuance were timely, we agree with the Surrogate that an application to compromise a wrongful death action pursuant to EPTL 5-4.6 is not a "claim" subject to unilateral discontinuance under CPLR 3217 (a) (*see generally Matter of Flight [Monroe Community Hosp.]*, 296 AD2d 845 [2002]; 7 Weinstein-Korn-Miller, NY Civ Prac ¶ 3217.05).

With respect to the order in appeal No. 3, we conclude that the Surrogate properly determined that petitioners' amended petitions were untimely. "A party may amend his [or her] pleading once without leave of court within [20] days after its service, or at any time before the period for responding to it expires, or within [20] days after service of a pleading responding to it" (CPLR 3025 [a]). Inasmuch as no responsive pleadings were required in this case (*see generally* SCPA 302 [1]; 404 [3]), the timeliness of the amended petitions is measured only by the 20-day time period following service of the original petitions (*see* CPLR 3025 [a]). Here, petitioners filed the amended petitions approximately 48 days after serving the original petitions, and thus the Surrogate properly concluded that petitioners were not entitled to amend the petitions as a matter of right.

With respect to the order in appeal No. 4, we conclude that, given the scope and nature of the settlement and the financial stakes involved, the Surrogate did not abuse her discretion in granting the application of the guardian ad litem for Ashley

Stanley to approve "the [nunc pro tunc] appointment and authorization" for members of his law firm to assist him and perform various duties on his behalf as guardian ad litem. Pursuant to 22 NYCRR 36.1 (a) (10), a court may appoint "the following persons or entities performing services for guardians [ad litem] . . . : (i) counsel; (ii) accountants; (iii) auctioneers; (iv) appraisers; (v) property managers; and (vi) real estate brokers" (*see generally* 22 NYCRR 36.2 [a]). We note that any question concerning the reasonableness of the fees paid to the guardians ad litem is premature at this time (*see generally* SCPA 405).

With respect to the order in appeal No. 5, we conclude that the Surrogate properly denied that part of petitioners' motion to vacate the order in appeal No. 3 for the reasons discussed with respect to that order. We further conclude that, under the circumstances of this case, the Surrogate did not abuse her discretion in denying that part of petitioners' motion for leave to file and serve amended petitions pursuant to CPLR 3025 (b) (*see generally Dionisio v Geo. De Rue Contrs., Inc.*, 38 AD3d 1172, 1174 [2007]). Indeed, the "amended" petitions were not truly amended petitions, but rather they were new pleadings seeking entirely different relief in an attempt to circumvent the order in appeal No. 1, which denied petitioners' requests to withdraw the original petitions and discontinue the proceedings.

We have reviewed the remaining contentions of petitioners with respect to each order and conclude that they are without merit. Present—Centra, J.P., Fahey, Peradotto, Lindley and Green, JJ.