Scileppi, J.
 

 In this action for wrongful death and pain and suffering, claimants’ intestate, Herman Springhorn, was killed on July 6,1962 when an automobile which he was operating was struck by another vehicle driven by Jack Proper, an escapee
 
 *315
 
 from the Hudson River State Hospital. It is claimed that the State is responsible for the death of Mr. Springhorn because its agents and employees negligently permitted Proper to escape, and thereafter, negligently attempted to apprehend him.
 

 Turning to the operative facts, it was established that on August 25, 1961, Jack Proper, also known as Arthur Grates, was brought to Bellevue Psychiatric Hospital by New York City policemen after he was found sleeping in Pennsylvania Station. He was then 17 years old and his condition was diagnosed as
 
 “
 
 psychosis with mental deficiency, severe ’ ’. Shortly thereafter, he was committed to Central Islip State Hospital for treatment and care as a mentally ill person. On April 17, 1962, Proper was transferred to Hudson River State Hospital where he was placed in an open ward. It appears that, at the time of this transfer, a bench warrant for his arrest for the crime of burglary, third degree, was attached to his record. Additionally, there is an indication that he stole two bicycles sometime prior to his initial placement in Bellevue. He became known as an agitator, a person who went around looking for trouble, and, contrary to hospital rules, was prone to excessive drinking. Proper became embroiled in a fight with a fellow patient on June 26, 1962 and also smashed a window. As a result of this incident, he was placed in a maximum security closed ward, which was reserved for the most dangerous patients in the hospital. On July 6, the night of Proper’s escape, there were 37 patients in this ward and, although two attendants were supposed to be assigned to the ward to supervise these patients, only one was, in fact, on duty. At approximately 7:15 p.m. Proper and another patient overpowered the attendant, dragged him into a seclusion room, stole his keys and escaped. Proper separated from his fellow escapee and four and one-half miles away from the hospital happened upon a car with the keys in the ignition. The car was reported stolen at 11:01 P.M.
 

 Sometime before 11:30 p.m., Troopers Held and MacGrillivray of the New York State Police had their cars positioned at the intersection of Routes 9 and 9-Gr, near the Village of Rhinebeck. They were told on their radios that there had been a hit-and-run accident and that the driver was believed headed north on Route 9. MacGrillivray positioned his car in the intersection and Held proceeded along Route 9. After Held left the inter
 
 *316
 
 section, another radio message was received by both troopers that a stolen vehicle was involved. About two miles from the intersection, Held identified the stolen car as it was proceeding at about 50 miles per hour toward the intersection. Held tried to force the vehicle off the road, but it accelerated away. The trooper gave chase at about 90 miles per hour and, after approximately 1% miles, the stolen vehicle went through a red light and hit the Springhorn vehicle which was proceeding through the intersection of Routes 9 and 9-0 with a green light in its favor. It was then learned that Proper was the driver of the stolen vehicle.
 

 The Court of Claims dismissed the claim finding that the conduct of the State Police in the pursuit of the stolen vehicle did not constitute negligence. With regard to the claim that the State had negligently allowed Proper to escape, the court concluded that although the State’s failure to have two attendants on duty on the night of the escape constituted negligence, such negligence was not the proximate cause of Mr. Spring-horn’s death. On appeal the Appellate Division reversed on the law and the facts and directed an assessment of damages. Agreeing that under
 
 Stanton
 
 v.
 
 State of New York
 
 (26 N Y 2d 990, affg. 29 A D 2d 612), claimants had failed to show that the State Police had been negligent in the chase and apprehension of the stolen vehicle, a majority of the court concluded that the State was under a duty to prevent Proper from escaping and that this duty was breached because only one attendant was on duty to supervise the closed ward. It held that this negligence was the proximate cause of the death of claimants’ intestate
 
 (Dunn
 
 v.
 
 State, of New York,
 
 34 A D 2d 267). The sole dissenter took the position that the death of claimants ’ intestate was not a foreseeable consequence of any act of the State and that it
 
 “
 
 should not be held liable under the facts * * * for the remote negligent acts of the inmate, Proper after his escape ”
 
 (id.,
 
 at pp. 271-272).
 

 On remand to the Court of Claims, a trial on the issue of damages was conducted and a judgment in favor of claimants was entered for $33,000 plus interest; the State appeals, as of rignt, pursuant to CPLR 5601 (subd. [d]).
 

 We conclude that there is no basis in the record before us for the imposition of liability on the State. Although claimants
 
 *317
 
 have shown that the State breached a duty which it owed to the community, that negligence was not the proximate cause of the injuries to claimants’ intestate.
 

 There is no question but that the State bears the responsibility for the protection of others in its operation of schools, hospitals and other institutions (see, e.g.,
 
 Flaherty
 
 v.
 
 State of New York,
 
 296 N. Y. 342, 346). This responsibility is not, however, unlimited, but rather is circumscribed by traditional concepts of duty
 
 (Excelsior Ins. Co. of N. Y.
 
 v.
 
 State of New York,
 
 296 N. Y. 40;
 
 Williams
 
 v.
 
 State of New York,
 
 308 N. Y. 548). In other words, as stated in
 
 Palsgraf
 
 v.
 
 Long Is. R. R. Co.
 
 (248 N. Y. 339, 344): “ The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension ”. This test,
 
 “
 
 has, in principle, been consistently applied by the courts in determining whether to impose liability upon the State where injury befalls the patient who elopes from a public institution (cf.
 
 Calabria
 
 v.
 
 State,
 
 [289 N. Y. 613], supra;
 
 Martindale
 
 v.
 
 State of New York,
 
 269 N. Y. 554;
 
 Shattuck
 
 v.
 
 State of New York,
 
 166 Misc. 271, affd. 254 App. Div. 926) or a third person who is assaulted by an escaped inmate of a mental hospital
 
 (Weihs
 
 v.
 
 State of New York,
 
 267 App. Div. 233;
 
 Jones
 
 v.
 
 State of New York,
 
 267 App. Div. 254), or where property is damaged by such an inmate.
 
 (Benson
 
 v.
 
 State,
 
 52 N. Y. S. 2d 239.) ”
 
 (Excelsior Ins. Co. of N.
 
 Y. v.
 
 State of New York,
 
 296 N. Y. 40, 45,
 
 supra).
 

 Applying these principles to the case before us, the State should have foreseen, in the person of Proper — a man with a history of violence and criminal behavior — a hazard to be guarded against. The agents of the State were under a duty to protect the public and it would appear that this responsibility was recognized when he was placed in a closed ward (see
 
 Weihs
 
 v.
 
 State of New York,
 
 267 App. Div. 233;
 
 Finkel
 
 v.
 
 State of New York,
 
 37 Misc 2d 757). The majority in the Appellate Division properly concluded that this duty was breached by the State’s inadequate supervision
 
 (Curley
 
 v.
 
 State of New York,
 
 148 Misc. 336, 339, affd.
 
 sub nom. Luke
 
 v.
 
 State of New York,
 
 253 App. Div. 783;
 
 Weihs
 
 v.
 
 State of New York,
 
 267 App. Div. 233,
 
 supra).
 
 Although the mere fact that one guard was on duty does not constitute negligence as a matter of law in all cases (see
 
 Blitzer
 
 
 *318
 
 v.
 
 State of New York,
 
 13 N Y 2d 637, affg. 16 A D 2d 191), it would appear that a finding of negligence is supported by sufficient evidence in this case.
 

 The determination that the State was negligent does not, however, spell the end of our inquiry since the State cannot be held liable unless it can be said that its negligence was the proximate cause of the death of claimants’ intestate. Stated differently, proximate cause is a question separate and apart from that of duty and negligence and it is only when these initial issues are resolved against the tort-feasor that the question of proximate cause arises (see, e.g.,
 
 Palsgraf
 
 v.
 
 Long Is. R. R. Co.,
 
 248 N. Y. 339, 346,
 
 supra).
 

 Thus, liability would only attach against the State if the death of Springhorn was a natural and probable consequence of the State’s negligence
 
 (Bolsenbroek
 
 v.
 
 Tully & Di Napoli,
 
 10 N Y 2d 960, affd. 12 A D 2d 376;
 
 Gralton
 
 v.
 
 Oliver,
 
 302 N. Y. 864, affg. 277 App. Div. 449;
 
 Saugerties Bank
 
 v.
 
 Delaware & Hudson Co.,
 
 236 N. Y. 425; see, also, Prosser, Law of Torts [4th ed.], § 42, pp. 244-250). In our view, the Court of Claims properly resolved this issue in favor of the State. As our court wrote in
 
 Saugerties Bank
 
 v.
 
 Delaware & Hudson Co.
 
 (236 N. Y. 425, 430,
 
 supra), “
 
 the act of a party sought to be charged is not to be regarded as a proximate cause unless it is in clear sequence with the result and unless it could have been reasonably anticipated that the consequences complained of would result from the alleged wrongful act ’ ’. The circumstances presented in the record before us do not allow for such a conclusion. Here, the fatal accident was a remote consequence of the State’s negligence. Some four hours after the escape, Proper chanced upon an automobile with the keys in the ignition and then drove negligently as he was attempting to avoid apprehension by the police. These were intervening causes which brought about the death of claimants’ intestate and consequently, because of this break in the chain of causation, the State’s negligence was not the proximate cause of the injuries complained of.
 

 Lastly, claimants suggest that the State Police were negligent in their pursuit of Proper. Our recent decision in
 
 Stanton
 
 v.
 
 State of New York
 
 (26 N Y 2d 990,
 
 supra)
 
 is dispositive of this issue. The troopers here were attempting to apprehend a man who they thought was a hit-and-run driver, took steps which
 
 *319
 
 they considered the most effective means of dealing with the emergent situation. As we said in
 
 Stanton (id.,
 
 at pp. 990, 991): ‘ ‘ While hindsight can often furnish reasons for following one course or another, the acts of the trooper here must be considered as of the time when, and circumstances under which, they occurred.” On the record before us, we are not prepared to say that their conduct was unreasonable.
 

 Accordingly, the judgment appealed from should be reversed, without costs and the original judgment of the Court of Claims, dismissing the claim, reinstated.
 

 Chief Judge Fuld and Judges Bergan, Breitel and Jasen concur with Judge Scileppi ; Judges Burke and Gibson dissent and vote to affirm on the opinion at the Appellate Division.
 

 Judgment reversed, etc.