OPINION OF THE COURT
 

 Ciparick, J.
 

 In this personal injury action involving multiple defendants, plaintiff before trial settled with the Kawasaki defendants/manufacturers, and at trial was found to share comparative fault with the remaining nonsettling defendant/ retailer, Robinson Cycle Sales, Inc. We must decide whether plaintiff’s recovery by verdict should be first reduced in accordance with the comparative fault provisions of CPLR 1411, or by the settlement set-off rule codified in General Obligations Law § 15-108 (a). A threshold issue, however, is whether under the circumstances of this case the nonsettling defendant, Robinson, should have been permitted to invoke the General Obligations Law § 15-108 (a) setoff. We hold that the setoff was properly allowed, but that the “settlement-first” method of computation should apply.
 

 L
 

 Plaintiff Robert M. Whalen suffered serious injuries when the three-wheel all-terrain vehicle (ATV) he was driving crashed into a tree. The ATV in question was designed and manufactured by defendants Kawasaki Motors Corporation, U.S.A., Kawasaki Motors Manufacturing Corporation, U.S.A., and Kawasaki Heavy Industries, Ltd. (collectively Kawasaki), and had been sold to plaintiffs friend by defendant Robinson. Plaintiff thereafter brought this action in Supreme Court, seeking compensatory and punitive damages under theories of negligence, strict products liability, and breach of express and implied warranties.
 

 
 *291
 
 During jury selection, plaintiff settled with Kawasaki for $1,600,000. As part of the settlement agreement, plaintiff withdrew all claims against Robinson which were derivative of Kawasaki’s liability, and proceeded to trial against Robinson, the lone remaining defendant, solely on a theory of negligence. Robinson, in turn, declined to seek any apportionment of liability against Kawasaki, preferring instead that the jury apportion fault solely between Robinson and plaintiff. The jury returned a verdict of $2,415,000 against Robinson; it found plaintiff 92% comparatively negligent and Robinson 8% at fault.
 

 Following the verdict, Robinson moved to amend its answer to assert General Obligations Law § 15-108’s set-off provisions as an affirmative defense. Reasoning that Robinson had waived its rights to a General Obligations Law § 15-108 setoff of the Kawasaki settlement by choosing to limit apportionment of liability at trial solely to itself and plaintiff, Supreme Court denied the motion. The trial court then discounted the $2,415,000 jury verdict by plaintiff’s 92% comparative fault, and held Robinson liable to plaintiff for $193,000.
 
 [1]
 
 Robinson appealed.
 

 The Appellate Division reversed, holding that Supreme Court had erred in denying Robinson’s motion to amend its answer to . include General Obligations Law § 15-108 as an affirmative defense
 
 (Whalen v Kawasaki Motors Corp.,
 
 242 AD2d 919). The Appellate Division reasoned that defendant’s invocation of General Obligations Law § 15-108 (a), even postverdict, would not prejudice plaintiff, and that Robinson had not waived its right to a setoff. Citing
 
 Williams v Niske
 
 (81 NY2d 437), the Appellate Division first discounted the jury verdict of $2,415,000 by plaintiffs 92% comparative fault — leaving $193,200, and then subtracted plaintiffs $1,600,000 Kawasaki settlement. This method of calculation left a negative balance, thus relieving Robinson of all monetary responsibility. We granted plaintiffs motion for leave to appeal, and now modify the order of the Appellate Division.
 

 IL
 

 We begin by reviewing the provisions of the governing statutes. New York’s comparative fault rules are codified in CPLR 1411, which provides for the discounting of a plaintiffs damages in proportion to his or her equitable share of blame in
 
 *292
 
 causing injury. In tort actions involving multiple defendants where a plaintiff settles with one or more defendants before trial, and proceeds to trial against the remaining defendants, General Obligations Law § 15-108 (a) permits nonsettling defendants a monetary offset against the amount of a verdict. The permitted reduction is the greatest of three items: (a) the amount stipulated as consideration for the release; (b) the amount actually paid for the release; or (c) the settling tortfeasor’s equitable share of plaintiff’s damages (General Obligations Law § 15-108 [a]). The purpose of the statute is to encourage settlement, although the statute is also concerned with ensuring equity. Plaintiffs should be fairly compensated, but nonsettling defendants should not bear more than their fair share of a plaintiff’s loss. Moreover, the possibility of double recovery should be avoided (see,
 
 Williams v Niske, supra,
 
 81 NY2d, at 442-444;
 
 accord, Dudick v Keene Corp.,
 
 82 NY2d 821,
 
 affg for reasons stated at
 
 188 AD2d 214, 218;
 
 Didner v Keene Corp.,
 
 82 NY2d 342, 351;
 
 Pollicina v Misericordia Hosp. Med. Ctr.,
 
 82 NY2d 332).
 

 IIL
 

 We must first address plaintiffs threshold argument, adopted by Supreme Court, that Robinson waived the benefits of section 15-108 (a) altogether by failing to seek an apportionment of liability against Kawasaki before verdict. Specifically, plaintiff argues that Robinson’s failure to seek an apportionment of liability against Kawasaki at trial may have inflated plaintiffs comparative share of liability and skewed the verdict against plaintiff. Plaintiff suggests that to allow Robinson to assert the statute under these circumstances would be unfair.
 

 By failing to seek apportionment against Kawasaki, Robinson foreclosed any possibility of the jury determining Kawasaki’s equitable share of the fault, and in that respect foreclosed use of that prong of the statute’s benefits
 
 (see, Bonnot v Fishman,
 
 88 AD2d 650, 650-651,
 
 affd on opn below
 
 57 NY2d 870). Section 15-108 (a), however, affords the nonsettling defendant the greatest of three modes of setoff, and the remaining two — the amount stipulated or paid by the settling defendant — were still properly available to Robinson, notwithstanding its failure to put before the jury the question of Kawasaki’s equitable share of fault
 
 (see, id.,
 
 at 651;
 
 see also, Audrieth v Parsons Sanitarium,
 
 588 F Supp 1380, 1381 [SD NY] [citing
 
 Bonnot]; Williams v Niske,
 
 81 NY2d 437,
 
 supra).
 
 Thus Robinson cannot be said to have waived all of General Obligations Law § 15-108’s benefits.
 

 
 *293
 
 Notably, as an affirmative defense, General Obligations Law § 15-108 (a) must be pled by a tortfeasor seeking its protection (see, CPLR 3018 [b];
 
 Hill v St. Clare’s Hosp.,
 
 67 NY2d 72, 84-85). In this case, Robinson did not plead General Obligations Law § 15-108 (a) as a defense in its original answer, as Kawasaki did not settle until the eve of trial. However, Robinson did not move to raise section 15-108 (a) as a defense until after the jury returned its verdict and the question is thus whether Robinson should have been permitted to delay in amending its answer. It cannot be said that the Appellate Division abused its discretion in allowing the amendment.
 

 Under the CPLR’s liberal pleadings practice, a party may amend its pleadings to raise General Obligations Law § 15-108 as a defense at any time, even after trial, provided that the late amendment does not prejudice the other party
 
 (see,
 
 CPLR 3025 [b]). Prejudice may be found where a party has incurred some change in position or hindrance in the preparation of its case which could have been avoided had the original pleading contained the proposed amendment
 
 (see, Loomis v Civetta Corintio Constr. Corp.,
 
 54 NY2d 18, 23-24;
 
 Ward, v City of Schenectady,
 
 204 AD2d 779, 781). In this case, immediately after the Kawasaki settlement, plaintiff stipulated that he would proceed at trial solely against Robinson on the basis of Robinson’s alleged negligence, and would not seek to attribute any blame to Kawasaki. Thus, there was no prejudice in permitting Robinson to assert General Obligations Law § 15-108 (a) after the jury verdict, as plaintiff had already irretrievably set his course for trial, and could not under the circumstances have sought any apportionment of fault against Kawasaki even if Robinson had raised General Obligations Law § 15-108 (a) earlier.
 

 In short, we see no basis to disturb the conclusion of the Appellate Division that, under the circumstances, Robinson should have been permitted to amend its answer to plead section 15-108 (a) as an affirmative defense.
 

 IV.
 

 Having determined that Robinson should be entitled to the statutory setoff, we next must answer the question of the proper interplay of General Obligations Law § 15-108 and CPLR 1411 in a case involving comparative fault. Since the statutes themselves do not answer this question, we must apply them in the manner that will harmonize and further their purposes of encouraging settlements while promoting equity and fairness in apportioning responsibility.
 

 
 *294
 
 Two possible approaches present themselves, sometimes referred to as the “settlement-first” and “fault-first” approaches
 
 (see, e.g., Shelby v Action
 
 Scaffolding, 171 Ariz 1, 827 P2d 462). The fault-first method, urged by Robinson and adopted by the Appellate Division, would first apply CPLR 1411, discounting the $2,415,000 gross verdict by plaintiffs 92% of comparative fault, and second apply the section 15-108 (a) setoff by deducting the $1,600,000 Kawasaki settlement from the remaining $193,200. This formula would leave Robinson with zero responsibility in damages. By contrast, the settlement-first approach would first apply section 15-108 (a) by deducting the $1,600,000 Kawasaki settlement from the $2,415,000 gross verdict. CPLR 1411 would then be applied to discount the remaining $815,000 of uncompensated damages by plaintiffs 92% comparative fault. This method would result in Robinson having to pay $65,200.
 

 We are persuaded that statutory objectives are best accomplished by the “settlement-first” method: first applying General Obligations Law § 15-108, thus reducing the jury verdict by the amount of the Kawasaki settlement, and then applying CPLR 1411 to discount the remaining sum by the proportion of plaintiffs comparative negligence.
 

 We are brought to this result by several of our recent decisions involving section 15-108 (a) setoffs, particularly
 
 Williams v Niske (supra); see also, Dudick v Keene Corp.
 
 (82 NY2d 821,
 
 affg for reasons stated at
 
 188 AD2d 214,
 
 supra); Didner v Keene Corp.
 
 (82 NY2d 342,
 
 supra)
 
 and
 
 Pollicina v Misericordia Hosp. Med. Ctr.
 
 (82 NY2d 332,
 
 supra).
 

 In
 
 Williams v Niske
 
 (81 NY2d 437,
 
 supra),
 
 the question was which of three possible methods of setoff should be applied to reduce a nonsettling defendant’s liability where plaintiff settled with four defendants before trial and with two other sets of defendants during trial. The jury assessed the shares of blame for plaintiffs damages at 35% for the lone nonsettling defendant, Billy the Kid, Inc. (BTK), and 65% for the two settling defendants
 
 (id.,
 
 at 439). The chief difficulty lay in the fact that no equitable shares were determined for the four defendants who settled before trial, so that General Obligations Law § 15-108 could not be applied literally
 
 (see, id.,
 
 at 440).
 

 The method we chose in
 
 Williams
 
 began by subtracting from the verdict. ($2,600,000) the sum of the pretrial settlements ($900,000), and then applying the usual General Obligations Law § 15-108 (a) analysis to apportion liability for the result
 
 *295
 
 ing $1,700,000 among the remaining defendants, both settling and nonsettling, whose percentages of liability had been determined at trial — 65% to settling defendants, 35% to non-settling defendant
 
 (id,.,
 
 at 441). This method yielded a recovery for plaintiff after trial of $595,000
 
 (id.).
 
 We opted for this method because it most closely comported with the dual statutory purposes of equity and encouragement of settlement
 
 (see, id.,
 
 at 445).
 

 In none of these cited cases, however, was there an allocation of comparative fault against the plaintiff. Moreover, in the instant case, there is effectively only one settling defendant and one nonsettling defendant, as compared to the roster of defendants found in these other cases. Nonetheless, the reasoning underlying the preceding cases, emphasizing logic and the importance of furthering the general purpose of section 15-108 (a), is compelling. Bearing in mind the rationales underlying these decisions, we now proceed to apply CPLR 1411 and General Obligations Law § 15-108 (a) to the instant case.
 

 We are persuaded that the goals of equitable apportionment of CPLR 1411 and promoting settlement of General Obligations Law § 15-108 are best served here by the settlement-first approach, similar to that employed in Williams.
 
 [2]
 

 Settlement-first tends to result in a more precise allocation of loss. In the instant case, the one constant figure, which presumably would have been unchanged regardless of whether there had been an equitable apportionment against Kawasaki, is the gross verdict awarded by the jury, representing its assessment of plaintiff’s total damages. The jury was asked to assess comparative fault only as between plaintiff and Robinson. The jury’s 92%-8% apportionment is therefore an accurate representation only of plaintiffs and Robinson’s levels of. culpability vis-a-vis each other; Kawasaki did not figure into the jury’s calculations.
 

 Although certainly many other elements — such as convenience, certainty and peace of mind — are factored into the
 
 *296
 
 terms of a settlement, the Kawasaki settlement in turn may be said to approximate the parties’ intuitive assessment of Kawasaki’s fault and damages
 
 (see, Rittenhouse v Erhart, supra,
 
 424 Mich, at 182-183, 380 NW2d, at 446). We cannot know how culpable, if at all, the jury would have found Kawasaki to be compared to plaintiff and Robinson, but we do have plaintiffs and Kawasaki’s own arm’s-length estimate of Kawasaki’s fair share of the damages in the form of their settlement. Thus, we must first deduct the Kawasaki settlement from plaintiffs total damages, since that represents the best measure we have of Kawasaki’s share of plaintiffs damages. Only then should the apportionment of the balance of plaintiffs loss be computed with the ratio of culpability as between plaintiff and Robinson as established by the jury
 
 (cf., Dudick v Keene Corp., supra,
 
 188 AD2d, at 219-220 [explaining logical superiority of aggregate approach to General Obligations Law § 15-108 setoff over case-by-case approach]).
 

 The settlement-first approach also better encourages parties to settle their differences, and thus advances the primary purpose of General Obligations Law § 15-108. In multiple defendant scenarios, the settlement-first approach offers an incentive for defendants to settle, because nonsettling defendants will tend to risk increasing their liability as other defendants settle, and the remaining defendants are more likely to be assessed increasing shares of the comparative fault
 
 (see, Jackson v Barton Malow Co.,
 
 131 Mich App 719, 722-723, 346 NW2d 591, 592-593).
 

 In contrast, the fault-first approach actually offers defendants a reason not to settle
 
 (see, Shelby v Action Scaffolding, supra,
 
 171 Ariz, at 7, 827 P2d, at 468;
 
 see also, Dudick v Keene Corp., supra,
 
 188 AD2d, at 222). Under the fault-first approach as applied by the Appellate Division, the nonsettling defendant in the instant case would escape responsibility altogether since plaintiffs doubly discounted damages would be completely set off by pretrial settlement.
 

 Thus, application of the settlement-first formula we adopt here results in defendant Robinson being liable to plaintiff in an amount reached after deducting the settlement amount from the gross jury verdict and then discounting the remainder by plaintiffs comparative fault — $2,415,000 minus $1,600,000 times 8% equals $65,200.
 

 Accordingly, the order of the Appellate Division should be modified, without costs, and the case remitted to Supreme
 
 *297
 
 Court for further proceedings in accordance with this opinion, and, as so modified, affirmed.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine and Wesley concur.
 

 Order modified, etc.
 

 [1]
 

 . The precise figure may have been $193,200.
 

 [2]
 

 .
 
 We note that our adoption of the settlement-first method is in accord with the prevailing trend among the courts of other States which have addressed this issue (see,
 
 e.g., Shelby v Action Scaffolding,
 
 171 Ariz 1, 827 P2d 462,
 
 supra; Rittenhouse v Erhart,
 
 424 Mich 166, 380 NW2d 440;
 
 Clark, v Kawasaki Motors Corp.,
 
 200 W Va 763, 490 SE2d 852;
 
 but see, e.g., Goulet v Whitin Mach. Works,
 
 399 Mass 547, 506 NE2d 95;
 
 Scott v Cascade Structures,
 
 100 Wash 2d 537, 673 P2d 179;
 
 see generally,
 
 Annotation,
 
 Comparative Fault: Calculation of Net Recovery by Applying Percentage of Plaintiffs Fault Before or After Subtracting Amount of Settlement by Less Than All Joint Tortfeasors,
 
 71 ALR4th 1108).