**06-5733-cv**
**Schipani v. McLeod**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————

August Term, 2007

(Argued: June 16, 2008                                    Decided: July 29, 2008
                                                         Amended: August 15, 2008)

Docket No. 06-5733-cv

————

FRANK SCHIPANI and OLGA SCHIPANI,

*Plaintiffs-Appellants*,

- v. -

WILLIAM S. MCLEOD, D.P. GALLIMORE & SONS and BRIAN J. RUZALSKI,

*Defendants-Cross-Defendants-Appellees.*

RUDOLPH BYRD, R. BYRD TRUCKING CO. and CHARLES CURRY,

*Defendants-Cross-Claimants-Appellees.*

————

Before:

WESLEY and HALL, *Circuit Judges*, and KOELTL, *District Judge*.[1]

Appeal from a judgment of the United States District Court for the Eastern District of
New York (Gold, M.J.) applying N.Y. General Obligations Law § 15-108(a) to reduce

————

[1] The Honorable John G. Koeltl, United States District Court for the Southern District of
New York, sitting by designation.

Appellants' damage award by the amount of the settling defendants' equitable share of damages. We vacate in part, holding that a defendant forfeits its right to an equitable share setoff when it fails to seek an apportionment before summary judgment is entered against it.

————————

LESTER B. HERZOG, Brooklyn, NY, *for Appellants*.

ERIC P. TOSCA, Law Offices of John P. Humphreys, New York, NY, *for Appellee D.P. Gallimore & Sons*.

————————

WESLEY, *Circuit Judge*:

Where a plaintiff settles with one of several joint tortfeasors, New York General Obligations Law § 15-108(a) provides that its claim against the remaining tortfeasors is reduced by the greater of: (1) the amount paid for the release; (2) the amount stipulated in the release; and (3) the released tortfeasor's equitable share of the plaintiff's damages.[2] N.Y. Gen. Oblig.

---

[2] In its entirety, the statute provides:

> When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.

> N.Y. Gen. Oblig. Law § 15-108(a).

-2-

Law § 15-108(a). The New York Court of Appeals has held that while the first two reductions are available at any point before final judgment is entered, the third is lost where a defendant fails to seek apportionment of liability until after a jury's liability verdict. *See Whalen v. Kawasaki Motors Corp., U.S.A.*, 92 N.Y.2d 288, 292 (1998). The question in this diversity action is whether a defendant similarly forfeits[3] its right to a setoff in the amount of the settling defendant's equitable share if it does not seek apportionment until after summary judgment is entered against it on the issue of liability. We hold that it does, and therefore vacate in part the judgment of the United States District Court for the Eastern District of New York (Gold, M.J.).

## BACKGROUND

Appellants filed this action to recover damages sustained during a three-vehicle collision on the New Jersey Turnpike on December 30, 1998. Appellants were passengers in a car owned and operated by Brian J. Ruzalski that was struck from behind by a tractor-trailer owned by D.P. Gallimore & Sons ("Gallimore") and driven by William S. McLeod. A third vehicle, a tractor-trailer owned by R. Byrd Trucking Company and operated by Rudolph Byrd and Charles Curry (collectively, the "Byrd Defendants"), was directly behind the Gallimore tractor-trailer. According to a report prepared by the New Jersey Police, the Byrd Trucking vehicle collided with the Gallimore tractor-trailer, forcing it into the rear of Ruzalski's Chevrolet Tahoe.

---

[3] Because many cases use "foreiture" and "waiver" interchangeably, we believe that "forfeiture" is the correct terminology here, because it refers to a litigant's "failure to make the timely assertion of a right," while "waiver" refers to a "litigant's *intentional relinquishment* of a known right." *Patterson v. Balsamico*, 440 F.3d 104, 112 (2d Cir. 2006) (internal quotation marks omitted) (emphasis added).

Shortly after the Schipanis filed this diversity action, they settled with the Byrd Defendants for $35,000.[4] The Schipanis then moved for summary judgment against Gallimore, arguing that it was negligent as a matter of law for violating New York Vehicle & Traffic Law § 1129(a), which prohibits drivers from following vehicles "more closely than is reasonable and prudent." In its response, Gallimore did not move to amend its answer to assert a § 15-108 defense and raised no defenses to its liability. Gallimore's sole argument was that Appellants did not suffer "serious injuries" as required by New York law. The district court (Johnson, J.) rejected that argument and granted the Schipanis' motion for summary judgment, holding that Gallimore "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Schipani v. McLeod*, No. 00-CV-4343, 2004 WL 825583, at *2 (E.D.N.Y. Mar. 31, 2004) (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Judge Johnson then referred the case to Magistrate Judge Pollak "for a determination of damages." *Id.* at *3. In accordance with that mandate, Judge Pollak ordered briefs setting forth the "basis and method for calculating damages," which were filed in the summer of 2004.

In February 2005, Judge Pollak recused herself, and the inquest was assigned to Magistrate Judge Gold. At a May 2005 conference, Judge Gold ordered supplemental briefing

---

[4] Appellants never pursued their claims against Ruzalski and McLeod which were subsequently dismissed with prejudice. *See Schipani v. McLeod*, No. 00-CV-4343, 2006 WL 3486778, at *1 (E.D.N.Y. Dec. 1, 2006).

on "set-off for prior settlement amounts [and] defendant['s] right to apportionment of liability."[5]
In those papers, Appellants argued that Gallimore had an opportunity to request an apportionment of liability before Judge Johnson, but lost it by failing to do so before summary judgment was entered. Appellants also contended that Judge Gold's consideration of apportionment exceeded his authority to "determin[e] damages." Gallimore, on the other hand, submitted that it could still seek apportionment because § 15-108 rights cannot be waived "prior to trial."

Judge Gold agreed with Gallimore, holding that the decision granting summary judgment was "a finding of liability and not an apportionment of that liability." *See Schipani v. McLeod*, No. 00-CV-4343, 2006 WL 3486778, at *4 (E.D.N.Y. Dec. 1, 2006). The court referenced *Whalen* for the proposition that a "defendant may amend an answer to assert a defense pursuant to Section 15-108 at any time, even after trial, provided there is no prejudice." *Id.* (citing *Whalen*, 92 N.Y.2d at 288). However, the court did not distinguish between a setoff in the amount of the settling defendant's equitable share of fault for causing the accident and a reduction by the amount paid or stipulated for the release. Having determined that the right to apportionment was not lost, Judge Gold found that the Byrd Defendants were 90% liable and Gallimore was 10% liable. *Id.* at *6. The court awarded Frank Schipani $115,000 and Olga Schipani $55,000 "for their past and future pain and suffering." *Id.* at *8. Applying § 15-108, the court subtracted $153,000, the Byrd Defendants' 90% share of liability, leaving an award of

---

[5] Pursuant to 28 U.S.C. § 636(c)(1), the parties consented to a trial before Magistrate Judge Gold, and agreed to have all issues decided on their submitted papers.

$11,500 to Frank Schipani and $5,500 to Olga Schipani. *Id.*

The Schipanis appeal from that judgment, contending, among other arguments, that Magistrate Judge Gold erred in permitting an apportionment of liability after summary judgment. We agree.

## DISCUSSION

## I

In *Whalen v. Kawasaki Motors Corp., U.S.A.*, 92 N.Y.2d 288 (1998), the New York Court of Appeals warned that "as an affirmative defense, General Obligations Law § 15-108(a) must be pled by a tortfeasor seeking its protection." *Id.* at 293. The plaintiff in *Whalen* was injured in the crash of an all-terrain vehicle manufactured by Kawasaki and sold by Robinson Cycle Sales ("Robinson"). *Id.* at 290. Following the crash, Whalen sued Kawasaki and Robinson under theories of negligence, strict products liability and breach of warranty. *Id.* During jury selection, Whalen settled with Kawasaki for $1.6 million, proceeding to trial only against Robinson and only under the negligence theory. *Id.* at 291. Robinson declined to seek an apportionment of liability, and the question before the Court of Appeals was whether Robinson could, after the verdict, move to amend its answer to assert § 15-108(a) as an affirmative defense. *Id.* The court held that a defendant that waits until after the liability verdict to raise § 15-108(a) is not entitled to the statute's full protection:

> By failing to seek apportionment against Kawasaki, Robinson foreclosed any
> possibility of the jury determining Kawasaki's equitable share of the fault, and in
> that respect foreclosed use of that prong of the statute's benefits. Section
> 15-108(a), however, affords the nonsettling defendant the greatest of three modes

of setoff, and the remaining two – the amount stipulated or paid by the settling defendant – were still properly available to Robinson, notwithstanding its failure to put before the jury the question of Kawasaki's equitable share of fault.

*Id.* at 292 (citations omitted); *see also Bonnot v. Fishman*, 88 A.D.2d 650, 651 (2d Dep't 1982) ("[Defendant], of course, has waived his right to prove the hospital's equitable share of the damages . . . (and to have the judgment against him reduced accordingly) . . . ."). Thus, although Robinson was barred from seeking apportionment, it was free to amend its answer to raise the remaining prongs of § 15-108, "provided that the late amendment does not prejudice the other party." *Whalen*, 92 N.Y.2d at 293.

Neither the New York Court of Appeals nor any of the departments of the Appellate Division has considered whether the right to an apportionment is forfeited with the entry of summary judgment on liability.[6] Nonetheless, we have little difficulty holding that it is. To date, only one court has faced this exact issue squarely. In *Chubb & Son Inc. v. Kelleher*, No. 92 CV 4484, 2006 WL 2711543 (E.D.N.Y. Sept. 21, 2006), Judge Amon, citing *Whalen*, held that a defendant who did not "assert § 15-108(a) in any way, until after summary judgment had been granted and his liability established . . . would not be entitled to seek a reduction in judgment based on apportionment of fault." *Id.* at *3.

That holding finds support in the decisions of New York's appellate courts. The Court of

---

[6] While this case might, at first blush, be a candidate for certification to the New York Court of Appeals, neither party advocated certification. Moreover, "existing authority" enables us to "predict[] on a reasonable basis how the New York Court of Appeals would rule if squarely confronted with this issue." *McCue v. City of N.Y. (In re World Trade Ctr. Disaster Site Litig.)*, 521 F.3d 169, 183 n.11 (2d Cir. 2008) (quoting *DiBella v. Hopkins*, 403 F.3d 102, 111-12 (2d Cir. 2005)).

-7-

Appeals has noted that "apportionment of fault is a component of the liability determination." *Bryant v. State*, 7 N.Y.3d 732, 733 (2006). Along the same lines, the Second Department has held that in bifurcated trials, liability should be apportioned during the liability phase, not the damages phase. *See, e.g.*, *Abbas v. Cole*, 44 A.D.3d 31, 34 (2d Dep't 2007) (quoting *Perez v. State*, 215 A.D.2d 740, 741-42 (2d Dep't 1995)). We agree. For forfeiture purposes, there is no logical distinction between a jury verdict and an award of summary judgment on the issue of liability. After all, in both federal and New York state courts, summary judgment is only appropriate where "there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see Jones Lang Wootton USA v. LeBoeuf, Lamb, Greene & MacRae*, 243 A.D.2d 168, 177 (1st Dep't 1998) ("[S]ummary judgment [is] the procedural equivalent of a trial."). What we take from these cases is that when liability and damages are determined separately, either through formal bifurcation or summary judgment, liability must be apportioned at the time it is determined.

Gallimore's argument to the contrary conflates two commonly confused legal concepts – negligence and liability. Negligence is a necessary – but not sufficient – condition for liability. The Court of Appeals has described negligence as "the failure to employ reasonable care – the care which the law's reasonably prudent man should use under the circumstances of a particular case." *McLean v. Triboro Coach Corp.*, 302 N.Y. 49, 51 (1950). However, mere negligence is not actionable – "Proof of negligence in the air, so to speak, will not do." *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 341 (1928). Causation is the catalyst that converts negligence into liability in tort. *See Dunn v. State*, 29 N.Y.2d 313, 318 (1971). In order for the defendant to

be held liable, the plaintiff must show not only that the defendant was negligent, but also that "the defendant's negligence was a substantial cause of the events which produced the injury." *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315 (1980).

Yet the law also recognizes that not every injury has only one cause. Thus, when multiple tortfeasors "act concurrently or in concert to produce a single injury, they may be held jointly and severally liable," *Ravo v. Rogatnick*, 70 N.Y.2d 305, 309 (1987), and plaintiffs may "recover the whole of their damages from any of the particular tortfeasors sued," *Graphic Arts Mut. Ins. Co. v. Bakers Mut. Ins. Co. of N.Y.*, 45 N.Y.2d 551, 557 (1978). When a joint tortfeasor asserts the affirmative defense of General Obligations Law § 15-108 to reduce its liability, liability is apportioned "by assessing the damage inflicted by each [joint tortfeasor]." *See Hill v. St. Clare's Hosp.*, 67 N.Y.2d 72, 85 (1986). This makes apportionment an issue of fact for the jury, *see Crawford v. N.Y. City Hous. Auth.*, 33 A.D.3d 956, 957 (2d Dep't 2006), and necessarily requires the factfinder to determine what caused plaintiff's injury. Consequently, New York juries are instructed to "weigh the degree of the fault of each defendant" and "decide what is a fair division of the responsibility of each defendant for *causing . . . plaintiff's injury*." N.Y. Pattern Jury Instructions – Civil 2:275 (2007) (emphasis added). Because apportionment is essentially an inquiry into causation, and causation must be determined in order to fix liability, the Court of Appeals has rightly said that "apportionment of fault is a component of the liability determination." *Bryant*, 7 N.Y.3d at 733.

These principles are clearly illustrated in this case. When the Schipanis moved for summary judgment on *liability*, they had to demonstrate both that Gallimore was negligent and

that its negligence was a substantial cause of the collision. Gallimore's negligence was predicated on its violation of New York Vehicle & Traffic Law § 1129(a). *See Schipani*, 2004 WL 825583, at *2; *see also Feeley v. St. Lawrence Univ.*, 13 A.D.3d 782, 783 (3d Dep't 2004) ("[A]n unexcused violation of the Vehicle and Traffic Law constitutes negligence per se."). It was at this point that Gallimore had the opportunity to show that while it may have been negligent, its negligence either did not cause the accident at all or was not its sole cause. However, it failed to do so. In judging Gallimore *liable*, the district court necessarily found that it caused the accident. The burden was on Gallimore to argue that other tortfeasors did as well. *See, e.g.*, *Bigelow v. Acands, Inc.*, 196 A.D.2d 436, 438 (1st Dep't 1993) ("[Nonsettling defendant] bore the burden of establishing the equitable shares attributable to the settling defendants for purposes of reducing the amount of [its] own responsibility for the damages."). Since it did not, Gallimore forfeited its opportunity to apportion liability. "[C]onsiderations of judicial economy could not tolerate a result which would require that this . . . case be retried . . . for the sole purpose of apportioning the liability among the various tortfeasors . . . ." *Constr. Tech., Inc. v. Lockformer Co.*, 781 F. Supp. 195, 202 (S.D.N.Y. 1990). But that is exactly what Gallimore's argument would create – summary judgment to establish "some" liability, apportionment by a factfinder to divide liability, and an inquest to calculate damages. Not surprisingly, Gallimore has cited no authority supporting this novel approach.

Judicial economy is not the only factor leading us to conclude that Gallimore forfeited its opportunity to apportion liability. Although both federal and New York state courts allow liberal amendments of pleadings, *see* Fed. R. Civ. P. 15(a)(2); N.Y. C.P.L.R. 3025(b), neither permits an

amendment that would prejudice the other party, *see Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008); *Whalen*, 92 N.Y.2d at 293. Here, the unfairness to the Schipanis is readily apparent. When they consented to having a magistrate judge conduct an inquest, they had no reason to anticipate that the inquest would include revisiting the issue of defendants' respective liability. Judge Johnson's summary judgment order "refer[red] the case to the magistrate judge for a determination of damages." *Schipani*, 2004 WL 825583, at *3. Apportionment was never mentioned. Had the Schipanis been on notice that a magistrate judge would ultimately apportion damages at an inquest, they may have pursued an entirely different litigation strategy, opting against referral to the magistrate, or requesting that liability be apportioned by a jury at trial. Regardless of whether their choice would have been different, it was their choice to make. Fundamental fairness cannot sustain an outcome that would turn Gallimore's silence into a tactical advantage. Non-settling defendants would have an incentive to wait until the latest allowable moment to seek apportionment, ambushing unsuspecting plaintiffs in the process.

Gallimore is correct that § 15-108 was enacted "to ensure that nonsettling tort-feasors are not required to bear more than their equitable share of liability." *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 331 (2d Cir. 1987). But the Legislature did not make § 15-108 apportionment an absolute right – it made it an affirmative defense, *see Whalen*, 92 N.Y.2d at 293, and affirmative defenses are subject to forfeiture if not raised in a timely fashion, *see, e.g.*, *Totalplan Corp. of Am. v. Colborne*, 14 F.3d 824, 832 (2d Cir. 1994). Gallimore had ample opportunity to amend its answer to seek apportionment, but in the nearly three years between the release of the Byrd Defendants and the entry of summary judgment, it failed to do so. Thus, we

hold that a defendant forfeits its right under § 15-108 to an offset in the amount of the settling codefendant's equitable share if it waits until after summary judgment on liability to seek an apportionment. Gallimore's offset under the statute was limited to the amount the Schipanis received from the Byrd Defendants for their release – $35,000. We vacate that portion of the district court's judgment awarding Gallimore a setoff in the amount of the Byrd Defendants' equitable share.[7]

## II

Appellants also contend that the district court erred in failing to award prejudgment and postjudgment interest. In their complaint, Appellants clearly demanded all "interest, . . . costs and disbursements of this action." The district court's failure to include both forms of interests in its judgment was error.

In a diversity case, state law governs the award of prejudgment interest. *See Baker v. Dorfman*, 239 F.3d 415, 425 (2d Cir. 2000). New York law provides that "[i]nterest *shall* be recovered upon the total sum awarded . . . from the date the verdict was rendered . . . to the date of entry of final judgment." N.Y. C.P.L.R. § 5002 (emphasis added). Where, as here, liability and damages are determined in separate verdicts rendered on different dates, the New York Court

---

[7] We find Appellants' argument that allowing *any* offset would be prejudicial under *Whelan* to be unconvincing. Their only asserted prejudice is that Gallimore waited too long to seek an offset. However, *Whalen* makes clear that a party may seek to amend its answer to seek a setoff of the amount paid or stipulated for a release "at any time, even after trial, provided that the late amendment does not prejudice the other party." *Whalen*, 92 N.Y.2d at 293 (citing N.Y. C.P.L.R. § 3025(b)). A plaintiff must point to more than the mere passage of time in order to prove such prejudice.

of Appeals has held that the right to interest accrues upon the entry of "the verdict holding the defendant liable" since that is when "plaintiff's right to be compensated for the damages he or she sustained becomes fixed in law." *Love v. State*, 78 N.Y.2d 540, 544 (1991). Thus, under *Love*, the Schipanis were entitled to prejudgment interest from the date the summary judgment order was entered, April 22, 2004, through the date of entry of final judgment on remand. *See Lewis v. Whelan*, 99 F.3d 542, 545-46 (2d Cir. 1996) (holding that postjudgment interest accrues from the date of entry on remand.).

In contrast, postjudgment interest is governed by federal statute. 28 U.S.C. § 1961(a) states that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment." Because we have consistently held that an award of postjudgment interest is mandatory, *see, e.g.*, *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004), the district court erred in not including interest at the statutory rate.

**III**

Finally, Appellants submit that the court erred in failing to award them any damages for loss of services. In his opinion, Judge Gold awarded "Frank Schipani $115,000, and Olga Schipani $55,000, for their *past and future pain and suffering*," *Schipani*, 2006 WL 3486778, at *8 (emphasis added), and made no mention of loss of services. However, Appellants clearly claimed these losses as damages in their complaint and placed the issue before the court at the inquest. In their "Affidavit Setting Forth the Basis and Method for Calculating Damages," Appellants labeled their action one "for serious personal injuries and loss of services," and

requested $150,000 each as damages "for past and future pain and suffering as well as for their reciprocal loss of services."

We express no view on whether Appellants are entitled to damages for loss of services, but remand for clarification. The court's opinion awarding damages is susceptible to multiple interpretations. It could mean that Appellants were not entitled to loss of services damages, although it did not explain why. It could also mean that its damage awards included pain and suffering *and* loss of services damages. However, the opinion expressly states that the figure is for "past and future pain and suffering" and does not reference loss of services. To resolve this ambiguity, we remand to the district court for clarification.

**CONCLUSION**

For the foregoing reasons, we VACATE in part the judgment of the district court and REMAND for further proceedings consistent with this opinion.